IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>v.<br>JOHNATHAN NATHANIEL ALLEN,<br>Defendant. | CASE NO.: 0:25-CR-1011-SAL<br>MOTION FOR VARIANCE SENTENCE |

NOW COMES the Defendant, Johnathan Nathaniel Allen, in the above-captioned action, acting by and through undersigned counsel, hereby filing this motion for a downward variance sentence. For the following reasons, Mr. Allen asserts that a sentence of 210 months' imprisonment is appropriate.

**I.**
**FACTUAL BACKGROUND**

Mr. Allen had a traumatic childhood. As recounted in the Presentence Investigation Report ("PSR"), Mr. Allen suffered physical and emotional abuse as a child at the hands of his mother, his mother's boyfriend, his grandmother, and his grandmother's girlfriend. *See* PSR ¶ 64. He was handcuffed and locked in a closet. *See* PSR ¶ 64. He was beaten with physical objects. *See* PSR ¶ 64. Once, he urinated on himself and his grandmother's girlfriend punished him by putting him in a diaper, giving him a pacifier, and taking photos of him, which she threatened to show to his school friends.

Despite this abuse, Mr. Allen succeeded. He graduated high school in 2017. *See* PSR ¶ 71. He honorably served this country in the United States Army for approximately three-and-a-

half years. *See* PSR ¶ 72. Shortly after he left military service he joined the Hamilton County Sheriff's Office, which is where he was employed at the time of his arrest. *See* PSR ¶ 73.

Unfortunately, Mr. Allen had a problem. He received sexual satisfaction from communicating with underage girls. He used various social media communication or gaming services, such as Reddit, Instagram, and Roblox, to contact underage girls, pretend he was an underage male himself, and implore them to send him sexual images or videos, several of whom complied. *See*, *e.g.*, PSR ¶¶ 25-32. While this behavior was reprehensible, he did not redistribute these images or videos and he never engaged in hands-on abuse.

Mr. Allen is deeply remorseful for his actions. He recognizes he has a problem and he intends on pursuing all treatment options available to him while incarcerated at the Bureau of Prisons. While he has not been able to obtain any such treatment while in pretrial detention, he has been committed to bettering himself as best he can, including by being baptized in June 2025.

## II.
## APPLICABLE LAW

There are numerous requirements set forth in 18 U.S.C. § 3553(a) that a sentencing court must consider in fashioning a sentence that is not greater than necessary to achieve the four goals of (1) retribution; (2) deterrence; (3) protection of the public; and (4) rehabilitation. These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory sentencing guidelines range;

(5) any pertinent sentencing guidelines policy statements;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## III.
## DISCUSSION

A sentence of 210 months' imprisonment is appropriate because it satisfies the "parsimony principle": a sentence that is sufficient, but *not greater than necessary*, to achieve the goals of sentencing. *See*, *e.g.*, *Holguin-Hernandez v. United States*, 589 U.S. 169, 174 (2020) ("The substantive standard that Congress has prescribed for *trial* courts is the 'parsimony principle' enshrined in § 3553(a)." (emphasis in original) (quoting *Dean v. United States*, 581 U.S. 62, 67 (2017)).

The Sentencing Guidelines provide for an unreasonable sentencing range in this case. Mr. Allen's operative guideline provision, U.S.S.G. § 2G2.1, is part of a sentencing scheme which is widely acknowledged to "lack an empirical basis." *United States v. Huffstatler*, 571 F.3d 620, 623 (7th Cir. 2009). Both § 2G2.1 and its distribution counterpart, § 2G2.2, have been roundly

criticized for "not [being] developed pursuant to the [Sentencing] Commission's institutional role and based on empirical data and national experience, but instead [being] developed largely pursuant to congressional directives." *United States v. Grober*, 624 F.3d 592, 608 (3d Cir. 2010). Section 2G2.1 "applies enhancements present in nearly every production case, including, for example, an adjustment of 2 or 4 depending on the age of the minor involved." *United States v. Price*, No. 09-CR-30107, 2012 WL 966971, at *11 (C.D. Ill. Mar. 21, 2012). Indeed, the Sentencing Commission acknowledged there are "several specific offense characteristics that are expected to apply in almost all production cases (e.g., age of the victim)" when it repurposed § 2G2.1 in 2004. U.S.S.G. App. C Supp., amend. 664.

As a result of this lack of institutional development, § 2G2.1 does not adequately capture the harm done by the varying degree of child pornography offenders. For example, Mr. Allen received a two-level enhancement pursuant to § 2G2.1(b)(2)(A) for "the commission of a sexual act or sexual contact" because his victim self-engaged in a sexual act. The guideline, in other words, does not distinguish between a hands-on offender (one who engages in "sexual contact" with a minor) and someone who produces child pornography without ever touching a child (where the child engages in a sexual act). Indeed, if Mr. Allen had groomed a child he knew to produce child pornography, and had never used a computer to communicate with that child, then Mr. Allen would be *better off* than he is now because he would not have received an enhancement under § 2G2.1(b)(6). Consequently, § 2G2.1 fails to provide a sentencing range which accurately distinguishes between the most and least culpable offenders.

Nationwide sentencing data confirms the guidelines ranges provided by §§ 2G2.1 and 2G2.2 are too high. In fiscal year 2025—the most recent available data—57.1 percent of all child pornography offenses resulted in a downward variance. *See* U.S. Sent'g Comm'n, *2025*

*Sourcebook of Federal Sentencing Statistics*, Table 31 (Mar. 2026) (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2025/Table31.pdf). Only tax offenses, with a 57.9% variance rate, resulted in a higher percentage of downward variances. Fiscal year 2025 was part of a larger trend, as well north of fifty percent of all child pornography cases resulted in downward variances in each of the prior five fiscal years.[1]

Moreover, the operation of U.S.S.G. § 4B1.5 works an unreasonable harm on Mr. Allen's sentencing range because the resulting range is divorced from the traditional goals of sentencing. Mr. Allen received a five-level increase to his base offense level pursuant to § 4B1.5(b). *See* PSR ¶ 59. The Sentencing Commission promulgated § 4B1.5 in response to a legislative directive "to increase penalties … in any case in which the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." § 505, Protection of Children from Sexual Predators Act of 1998, Pub. L. 105-314, 112 Stat. 2974 (Oct. 30, 1998); *see also* U.S.S.G. App. C Supp., amend. 615. Congress has separately directly amended the commentary to § 4B1.5 to expand the provision's reach. *See* U.S.S.G. App. C Supp., amend. 649; *see also United States v. Fox*, 926 F.3d 1275, 1281 (11th Cir. 2019) ("Congress specifically contemplated that the five-level enhancement under § 4B1.5(b)(1) should apply in circumstances where a minor victim is repeatedly abused by the same perpetrator on separate occasions."). Accordingly, § 4B1.5, just like §§ 2G2.1 and 2G2.2, is not the product of the Sentencing Commission's reasoned study and

---

[1] The percentages are as follows: 60.8% in 2020 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/Table31.pdf); 60.2% in 2021 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2021/Table31.pdf); 58.3% in 2022 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/Table31.pdf); 59.6% in 2023 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2023/Table31.pdf); and 56.9% in 2024 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2024/Table31.pdf).

provides a "less reliable" outcome "than in other cases where the guidelines are based on study and empirical data." *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008); *see also id.* ("The statute here provides a broad range of punishment for this crime, and if Congress does not want the courts to try and sentence individual defendants throughout that range based on the facts and circumstances of each case, then Congress should amend the statute, rather than manipulate an advisory guideline and blunt the effectiveness and reliability of the work of the Sentencing Commission.").

The operation of § 4B1.5 in Mr. Allen's case bears this out. If Mr. Allen had previously committed a sex offense, rendering him a recidivist, his guideline range would be *lower* than it stands now. In such a case, § 4B1.5(a), rather than § 4B1.5(b), would apply to Mr. Allen. His adjusted offense level, *see* PSR ¶ 58, would remain a 38 and would then be reduced by three levels to a total offense level of 35. His criminal history category would increase from I to V. His sentencing range, therefore, would be 262-327 months' imprisonment rather than the 292-365-month range he currently faces. Mr. Allen submits this Court should reject any guideline provision where his sentencing range is *worse* because he never committed this crime in the past.

In sum, Mr. Allen submits this Court should sentence him based on factors which are relevant to his degree of culpability rather than the factors outlined for the Sentencing Commission by Congress. He acknowledges that his case does not present the minimum level of conduct which would warrant the mandatory minimum sentence because he communicated with multiple minors over social media and at least one gaming platform. However, he did not revictimize the children by distributing their images to others. He did not engage in hands-on production. He did not prey on young children. He has no criminal history. A 210-month

sentence accurately reflects the harm he caused while acknowledging his conduct is not among the most culpable child pornography production offenders.

Moreover, Mr. Allen's personal characteristics support a 210-month sentence. He is deeply remorseful for his actions and the harm it caused the children and their families. While Mr. Allen's traumatic childhood experiences do not excuse his behavior, they undoubtedly played some role in his conduct. He will be able to explore that trauma and its potential connection to his actions in this case through treatment—both at the Bureau of Prisons and while on supervised release. He also honorably served this country in the military and served as a police officer following his military service. These mitigating circumstances, which are not captured by the guidelines, support a sentence below the guideline range.

Additionally, the need to avoid unwarranted sentencing disparities—§ 3553(a)(6)—supports a sentence of 210 months' imprisonment. Section 3553(a)(6) is focused on "eliminat[ing] unwarranted sentencing disparities nationwide." *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996). Here, a 210-month sentence is in line with sentences imposed on similarly situated defendants in this district. Utilizing the United States Sentencing Commission's Interactive Data Analyzer (available at https://ida.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FIDA%2F_portal%2FIDA%20Dashboards), there have been thirty-four similarly situated defendants (those with a criminal history category of I and whose primary guideline is § 2G2.1)[2] sentenced in the last five fiscal years in the District of South Carolina. The average imprisonment length for those defendants was 207 months' imprisonment, and the median imprisonment length was 205 months' imprisonment:

[2] Unlike the JSIN tool, the Interactive Data Analyzer does not permit the user to search by offense level as well. To reach the sentence length analysis, the user must first access the "Sentencing Outcomes" tab and then access the "Sentence Length" subtab.

**Average and Median Imprisonment Length**

Fiscal Year 2025,2024,2023,2022,2021




The figure includes the 34 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure. Sentences of 470 months or greater (including life) were included in the sentence average computations as 470 months. The information in this figure does not include probation or conditions of confinement as described in USSG §5C1.1.

**FILTER:**

Fiscal Year: 2025,2024,2023,2022,2021; Circuit: All; State: All; District: South Carolina; Race: All; Gender: All; Age: All; Citizenship: All; Education: All; Crime Type: All; Guideline: §2G2.1; Drug Type: All; §2B1.1 Offense Type: All; Sentencing Zone: All; Criminal History: I; Career Offender Status: All

Finally, the goals of sentencing—§ 3553(a)(2)—are met by a 210-month sentence. A 210-month sentence affords just punishment for all the reasons explained above. Such a sentence also provides significant general deterrence because it demonstrates that Mr. Allen's behavior will not be tolerated and will result in a significant sentence, even for individuals with no criminal history. A 210-month sentence also affords specific deterrence as Mr. Allen knows further behavior will result in a sentence that will likely cost him much of the rest of his life. For the same reason, such a sentence would protect the public from Mr. Allen for more than a decade. Finally, Mr. Allen can get treatment while in the Bureau of Prisons and will be able to continue treatment upon release. In short, a 210-month sentence is sufficient, but not greater than necessary, to achieve the § 3553(a)(2) goals of sentencing.

## IV.
## CONCLUSION

For the reasons stated, Mr. Allen respectfully requests this Court impose a sentence of 210 months' imprisonment.

Respectfully submitted,

s/ Jeremy A. Thompson
Jeremy A. Thompson (#10342)
Assistant Federal Public Defender
Office of the Federal Public Defender
1901 Assembly Street, Suite 200
Columbia, SC 29201
803-765-5077
Jeremy_Thompson@fd.org
ATTORNEY FOR THE DEFENDANT

This 8th day of September, 2026.